**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **BEVERLY DIANE CROSS** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-459** |
| | § | **(4:19-CR-304(1))** |
| **UNITED STATES OF AMERICA** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the Court is Movant Beverly Diane Cross's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255, in which she asserts constitutional violations concerning her Eastern District of Texas, Sherman Division sentence.[1] After reviewing the case, the Court concludes that Movant's § 2255 motion should be denied.

## I.  BACKGROUND

On December 4, 2019, the Government filed an Information charging Movant with one count of wire fraud in violation of 18 U.S.C. § 1343. Crim. ECF (Dkt. #1). Movant waived Indictment and by way of a Plea Agreement entered December 12, 2019, Movant pleaded guilty to the charges. Crim. ECF (Dkt. #7 & #9).[2] Movant affirmatively stated that the plea of guilty was "freely and voluntarily made and is not the result of force, threats, or promises other than those set forth" in the agreement. *Id*., pg. 7. In addition, Movant waived her right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture on all grounds and agreed not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding,

---

[1] Movant is represented by counsel, Susan Jeanne Clouthier.

[2] When referencing the habeas docket, the court will refer to docket entries as Dkt. #__. When referencing the criminal docket, the court will refer to docket entries as Crim. ECF (Dkt. #__).

including, but not limited to, a proceeding under 28 U.S.C. § 2255.  *Id*.  Movant did reserve the right

to appeal any punishment imposed in excess of the statutory maximum and the right to appeal or

seek collateral review of a claim of ineffective assistance of counsel.  *Id*.  Movant also signed a

Factual Basis stating the following:

1.  From in or about September 2015 to in or about June 2019, Defendant Beverly Diane **Cross** ("**Cross**") was employed by MicroFab as its accountant, responsible for performing all accounting and payroll duties.

2.  During **Cross's** employment at MicroFab, MicroFab subscribed to Intuit QuickBooks payroll software, which only was installed on **Cross's** computer workstation.  **Cross** was the sole user of the Admin login for MicroFab's payroll software subscription.  Only **Cross** had access to and the ability to enter and alter payroll data, including, among other things, bank account information and payment amounts, in the payroll software.

3.  Using the Intuit QuickBooks payroll software, **Cross** electronically transmitted payroll data from her MicroFab computer workstation in Plano, Texas, by wire communication in interstate commerce to Intuit's computer servers, which were located outside of Texas, for the purpose of causing Intuit to pay MicroFab's employees.

4.  After Intuit received the payroll data that **Cross** transmitted, Intuit initiated bank-to-bank electronic transfers, also known as ACH transfers, from MicroFab's account at Bank of America account ( BOA ), Plano, Texas, account number x8466.  The funds withdrawn from MicroFab's BOA account were directly deposited into bank accounts held by MicroFab's employees.  All ACH transfers initiated by Intuit were processed through the Federal Reserve Bank, New York, New York.

5.  **Cross** was the sole signatory and owner of the following accounts at Independent Bank, McKinney, Texas: checking account x3826 and savings account xl819.

6.  From in or about September 2015 through in or about June 2019, **Cross** devised and executed a scheme to defraud MicroFab, wherein she entered false payroll data into the Intuit Quickbooks payroll software on her MicroFab computer workstation, located in Plano, Texas.  She did this to unlawfully pay herself unearned salary amounts and undue expense reimbursements.  From her computer workstation at MicroFab, **Cross** then

2

transmitted the false payroll data to Intuit's computer servers, which were located outside of Texas, by means of wire communications in interstate commerce.

7.    By transmitting the false payroll data to Intuit, **Cross** caused Intuit to execute ACH transfers of funds by wire communications in interstate commerce from MicroFab's BOA checking account to **Cross's** Independent Bank checking and savings accounts.

8.    To conceal **Cross's** fraudulent activity, she falsely described payments to herself in MicroFab's payroll data as "Reimb Expenses." Additionally, she attempted to conceal her fraudulent activity by deleting the false payroll data that she entered after she transmitted the data to Intuit.

9.    **Cross's** scheme to defraud MicroFab included, but was not limited to, 59 fraudulent transactions of payroll data by wire communications in interstate commerce that she transmitted from her computer workstation at MicroFab in Plano, Texas, to Intuit's computer servers located in [sic] outside of Texas. **Cross's** 59 fraudulent transactions of payroll data caused Intuit to execute ACH transfers totaling at least $637,155.13 from MicroFab's BOA account to her accounts at Independent Bank.

10.   **Cross's** scheme to defraud included Count One in the Information: On August 15, 2017, **Cross** transmitted by wire communication in interstate commerce a salary overpayment in the amount of $43,000.00 to Intuit's computer servers, which caused $40,237.50 (payroll taxes deducted) to be withdrawn from MicroFab's BOA account x8466 and deposited into **Cross's** Independent Bank account xl819.

Crim. ECF (Dkt. #11).  Movant made her Initial Appearance and entered her plea of guilty to the Information on the same day before former Magistrate Judge Christine Nowak.  Crim. ECF (Dkt. #6 & #34).  Former Magistrate Judge Nowak entered her Findings of Fact and Recommendation on Guilty Plea on December 13, 2019, which were adopted by this Court on December 17, 2019.  Crim. ECF (Dkt. #13 & #15).

On June 3, 2020, Movant was sentenced to 102 months' imprisonment to be followed by a three year term of supervised release.  Crim. ECF (#27 & #33).  Judgment was entered the same day.

3

Crim. ECF (#29).  Movant did not file an appeal and these proceedings followed.

In her motion to vacate, set aside or correct sentence, Movant asserts the following points of error:

1.    Trial counsel was ineffective for failing to investigate the victim impact on MicroFab's employees;

2.    Trial counsel was ineffective in failing to investigate Movant's alcoholism and difficult background in order to mitigate her sentence;

3.    Trial counsel was ineffective in failing to object to the unreasonableness of the upward variance;

4.    Trial counsel's deficient performance cumulatively caused Movant prejudice, and if left unaddressed, would cause a substantial miscarriage of justice.

Motion to Vacate, Set Aside or Correct Sentence (Dkt. #1).  Movant attaches several exhibits to her motion, most of which are part of the criminal record in this matter (Exhibits A-J).  Movant's Affidavit in support of her motion to vacate, set aside, or correct sentence is attached as Exhibit I.

The Government was ordered to show cause on March 31, 2022, and filed a Response on July 13, 2022 (Dkt. #3 & #7).  The Government argues that the record establishes that Movant's plea was knowing and voluntary and that all of her claims of ineffective assistance of counsel lack merit.[3]  The Government also provided an affidavit from Movant's trial counsel, Keith Gore, as Attachment A. *Id*.  Movant filed a Reply on August 28, 2022 (Dkt. #9).  This motion to vacate, set aside or correct sentence is now ripe for consideration.

_____

[3] In Response, the Government also construed Movant's claims to allege that counsel was ineffective for not appealing her sentence.  A review of the motion to vacate and reply brief reveal no such argument. Counsel for Movant argues that trial counsel was ineffective in failing to object to the upward variance which waived the argument for appeal.  No where does Movant allege that she asked counsel to file an appeal and he failed to do so.

## II. STANDARD OF REVIEW

The first paragraph of 28 U.S.C. § 2255 sets out the claims which are cognizable under the statute.  These are: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.

After conviction and exhaustion, or waiver, of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted.  *United States v. Frady*, 456 U.S. 152, 164-65 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991).  A defendant can challenge his conviction or sentence after it is presumed final on issues of constitutional or jurisdictional magnitude only, and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the errors.  *Shaid*, 937 F.2d at 232.

Section 2255 does not offer recourse to all who suffer trial errors.  It is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981).  In other words, a writ of habeas corpus will not be allowed to do service for an appeal.  *Davis v. United States*, 417 U.S. 33, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1995).  Further, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack."  *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

## III. ANALYSIS

In order to establish ineffective assistance of counsel, Movant must prove counsel's performance was deficient, and the deficient performance prejudiced Movant's defense. *Strickland v. Washington*, 466 U.S. 668, 689-92 (1984).  Because Movant must prove both deficient performance and prejudice, failure to prove either will be fatal to her claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a result, there is a strong presumption that counsel rendered reasonable, professional assistance, and that the challenged conduct was the result of a reasoned trial strategy. *Id.; United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009).  To overcome the presumption that counsel provided reasonably effective assistance, Movant must prove her attorney's performance was objectively unreasonable in light of the facts of the Movant's case, viewed as of the time of the attorney's conduct. *Strickland*, 466 U.S. at 689-90; *Fields*, 565 F.3d at 294.

In addition to proving counsel's performance was deficient, Movant is required to show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92.  Movant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Mere allegations of prejudice are insufficient; the Movant must affirmatively prove, by a preponderance of the evidence, that she was prejudiced as a result of counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant.  "This includes all claims of ineffective assistance of counsel, except insofar as the

alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea[.]"  *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (internal and concluding citations omitted).  This includes claims regarding a failure to investigate or a failure to challenge police misconduct.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  In the context of a guilty plea, a defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The court must determine that the plea represents "a voluntary choice among the alternative courses of action open to the defendant."  *Id*. 474 U.S. at 56.  "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Lee v. United States*, 582 U.S. 357, 369 (2017).  Additionally, the Supreme Court has determined that "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  "If a defendant understands the charges against him, understands the consequences of his guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review."  *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc).

Whether the representation was deficient is determined as measured against an objective standard of reasonableness.  *See Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with

obvious unfairness." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Woodward v. Epps*, 580 F.3d 318, 329 (5th Cir. 2009) (quoting *Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989)).

### A.      Knowing and Voluntary Plea

Interestingly, while counsel for Movant only challenges the effectiveness of trial counsel as it relates to Movant's sentence, counsel attaches an affidavit from Movant claiming she was under the influence of alcohol on the day she signed the plea agreement. Ex. I (Dkt. #1-9). Movant states:

> My lawyer knew I was drinking heavily, and I was often obviously drunk when I met him at his office. I have had a problem with alcohol for a long time. The probation officer also noticed and so did the Judge. My son had to drive me to the meetings with my lawyer because I was too drunk to drive. I was also drunk on the day I signed the plea agreement. My lawyer did not offer me an evaluation of my alcoholism or make sure I was sober enough to understand what I was signing. Because of my excessive drinking, I was unable to participate in my defense or make a reasoned decision about the plea. If I had been sober and in sound mind, I would never have pleaded guilty, and I would have insisted on going to trial.

*Id*. This is a direct challenge to the effectiveness of trial counsel as it relates to the knowing and voluntary nature of the plea which must be addressed by this Court now sitting in habeas. Movant's trial counsel, in response, states:

> I received proposed plea papers from the Government on November 12, 2019. I emailed the proposed plea papers to [Movant] on November 13, 2019. [Movant] and I discussed the proposed plea papers, which included an Information containing two counts. After further negotiations, the prosecutor agreed to drop one of the counts and on November 22, 2019, emailed me a new Information containing only one count, to which [Movant] pleaded guilty.
>
> [Movant] and I read and reviewed the plea papers in detail. Further, after reviewing and discussing the plea papers with me. [Movant] initialed each page of the Information, plea agreement, and factual basis, and signed the signature page of each document. I was and am satisfied that [Movant] understood the meaning and

consequences of signing the plea papers.

Prior to her change of plea hearing, I reviewed the sentencing guidelines with [Movant] and we discussed how they may apply to her case. She understood the guidelines were advisory and not binding on the Court, which she also acknowledged during her change of plea hearing.

It may be worth noting that [Movant] did not tell anyone (including myself) during the court process that she did not understand the meaning and effect of the plea papers. She said no such thing to the probation officer during the presentence interview. Likewise, she said no such thing to the District Court during the sentencing hearing. Her writ is the first time I have heard this accusation.

As the Court is aware, during the change of plea hearing, the Magistrate Judge reviewed the plea papers with [Movant]. The Magistrate Judge tested [Movant's] understanding of the documents by, in part, asking her questions about the meaning and effect. Based on [Movant's] answers, her signatures and initials on the plea papers, her demeanor in court, etc., the Magistrate Judge accepted [Movant's] plea of guilty and then recommended that the District Court accept it (See Document 12, Findings of Fact and Recommendation on Guilty Plea).

In paragraph 4 of her affidavit, [Movant] claims she was drunk on the day she signed the plea agreement. I cannot say whether [Movant] was drunk *at some point* during the day on which she signed the plea papers, but it was not my impression that she was drunk *when* she signed them. She discussed the papers with me, asked appropriate questions, read parts of them out-loud without noticeable slurring of speech, etc.

She further claims that because of "excessive drinking, I was unable to participate in my defense or make a reasoned decision about the plea. If I had been sober and in sound mind, I would have never pleaded guilty and I would have insisted on going to trial." (Page ID #97). [Movant's] claims are so absurdly false they could make a cat laugh. It is also worth noting that [Movant's] writ does not challenge the voluntariness of her guilty plea due to intoxication or otherwise.

[Movant] knew and understood her right to plead "not guilty" and have a jury trial. She did not want to do so. [Movant] didn't want to have a jury trial because she believed she would lose, in part because she had already admitted the offense to the victim and an FBI Agent. [Movant] and I discussed the facts of the case and the Government's discovery material. She freely admitted that she had stolen hundreds of thousands of dollars from the victim and converted the stolen funds to her own use. She had no defense to the charged conduct. [Movant] knew the Government could easily prove the charge against her; not only did they have her admission, but

her theft and spending of the money were easily traceable.

Affidavit of Keith Gore (Dkt. #7-2).

A review of the record in this case comports with Mr. Gore's recollection. Movant and Mr. Gore both signed the Plea Agreement on November 24, 2019. Crim. ECF (Dkt. #9). The Sealed Addendum to the Plea Agreement and Factual Basis were signed on the same day. Crim. ECF (Dkt. #10 & #11). The transcript of the plea hearing held December 12, 2019, reflects that former Magistrate Judge Christine Nowak advised Movant of her right to a jury trial, that by pleading guilty she was waiving her right to a jury trial, and that by pleading guilty she would be convicted for the charge. Crim. ECF (Dkt. #34 at 7-8). To each question, Movant responded in the affirmative. *Id*. While Movant affirmed that she had a history of drinking and/or problems with drugs, she stated that did not feel like it would affect her ability to understand what was going on in the proceedings that day. *Id*., pg. 9. Movant also affirmed that she was diagnosed with mental health problems five years prior, but did not feel that they would have an impact on her understanding of the proceedings. *Id*., pg. 10. Importantly, former Magistrate Judge Nowak asked the following:

THE COURT: Have you, in fact, understood everything that we've talked about so far?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you telling me that, at this time, you feel 100 percent physically and mentally fit for us to press forward in taking your plea?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, Counsel, I'll just ask for you to confirm because you've had a further opportunity to speak with your client. Are you aware of any reason whatsoever she's not able to enter a knowing and intelligent plea?

10

MR. GORE:   No, Your Honor.

THE COURT:   Then, at this time, I would like for us to turn and look at this information together.

        Now, [Movant], you told me at the outset that you had a copy of the information, that you'd read it and talked with your lawyer about it.

        Do each of those three things remain true?

THE DEFENDANT: Yes, ma'am.

THE COURT:   Have you also had a full and fair opportunity to talk with your lawyer about all the facts of your case, all the discovery in your case, and any defenses that you might have to this charge pending against you in Count 1?

THE DEFENDANT: Yes, ma'am.

THE COURT:   And following all of your communications with your counsel, are you fully satisfied with the representation and advice that you have received in connection with your case as well as in connection with your decision to enter a guilty plea here today?

THE DEFENDANT: Yes, ma'am.

*Id.*, pgs. 10-11.  Movant stated that she understood the charges filed against her, admitted the essential elements of Count 1, that she understood the maximum range of punishment was 20 years, a fine not to exceed $250,000.00 or twice the pecuniary gain, a term of supervised release of not more than 3 years, a mandatory special assessment of $100.00, and that following her entry of the plea that day, she would be subject to the range of penalties and consequences, including forfeiture. *Id.*, pgs. 12-14.  Movant stated she understood that she would be sentenced by the District Court, that the federal sentencing guidelines were advisory only, and that she reviewed the relevant guidelines with her trial counsel.  *Id.*, pgs. 14-15.  Specifically, former Magistrate Judge Nowak asked Movant

11

if she understood that "the district judge can depart from those guidelines and could sentence you all the way up to the statutory maximum for this offense," to which Movant affirmed that she did understand.  *Id.*, pg. 15.  Former Magistrate Judge Nowak reviewed the terms of the plea Agreement with Movant and affirmed that it was Movant's signature on the plea agreement and addendum, that she spoke with counsel about each paragraph of the plea agreement and addendum and understood everything before she signed it.  *Id.*, pg. 16.  Movant also affirmed she understood the waiver provisions contained in the plea agreement.  *Id.*, pg. 17.  Movant stated she understood that she would remain bound by the plea agreement even if the sentence she ultimately received was more severe than what she expected or hoped to get.  *Id.*, pg. 18.  Finally, Movant stated she had no questions regarding the plea agreement and addendum, that no one forced her, threatened her, coerced her, or made her enter her plea of guilty, and that the Factual Basis was correct.  *Id.*, pgs. 20-26.  Mr. Gore stated that in his opinion Movant understood the relevant documents and agreed with her decision to plead guilty.  *Id.*, pg. 28.  Importantly, the change of plea and the sentencing transcripts are absolutely devoid of any discussion by Movant that she was under the influence during the plea proceedings and did not understand the consequences of the proceedings or plea agreement.  Crim. ECF (Dkt. #33 & 34).

The record shows Movant's choice to plead guilty was a voluntary choice among the alternative courses of action open to her.  "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'"  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge*, 431 U.S. at 73–74).  In light of the statements Movant made in open court, it cannot be concluded that Movant's plea was involuntary or unknowingly entered. The record demonstrates Movant's plea was knowing,

voluntary and intelligent.  As Movant has failed to show either deficient performance or prejudice relating to her claim of ineffective assistance of counsel as to the voluntariness of the plea, this claim is denied.

**B.      Failure to Investigate Victim Impact**

With respect to this claim, Movant argues trial counsel was on notice that MicroFab claimed substantial financial hardship based on the Presentence Investigation Report ("PSR"), for which Probation added two levels to the recommended guidelines.  Despite this notice, Movant contends that trial counsel failed to conduct an adequate investigation and thus failed to object to the PSR and put forth any evidence to defend the evidence presented by the Government regarding victim impact. Movant alleges "[h]ad Mr. Gore conducted a reasonable investigation, he would have discovered that the 'two key employees' MicroFab alleged to have let go due to [Movant's] actions, actually left for other reasons unrelated to [Movant]."  Movant provides an Affidavit from Ralph Beaster, one of the former employees, stating that he and another employee left voluntarily.  Exhibit F (Dkt. #1). Movant argues that with this information, there was a substantial likelihood that the Court would not have imposed such a "massive upward variance."

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  In assessing unreasonableness, a heavy measure of deference must be applied to counsel's judgments.  *Id.*  "A defendant who alleges a failure to investigate on the part of [her] counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000).  "[T]here is no presumption of prejudice based on the failure to

investigate." *Gonzalez v. United States*, No. 5:19-CV-145, 2020 WL 1893552, at *3 (S.D. Tex. Jan.

24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

While Movant, here, alleges with specificity what the investigation would have revealed,

Movant misstates the value of this additional evidence and has failed to show prejudice.  In the PSR,

Probation explained the two-level increase as follows:

> The Victim Impact Statement makes it apparent that the victim suffered a great deal
> of financial hardship as a result of the [Movant's] actions.  Consequently, the
> company instituted mandatory salary reductions for all employees, banks were
> unwilling to provide necessary loans, vendors refused to provide services, all of
> which contributed to a reduction in business and business opportunities.

Crim. ECF (Dkt. # 23 at 6).  These are all things that were known to Movant and trial counsel in

negotiating the plea agreement.  Movant was aware of the impact her actions had on the company

and the individual employees, and she had no objections to the PSR.  Crim. ECF (Dkt. #22); (Dkt#

7-2 at 6).[4]  And while the Victim Impact Statement does allege that due to salary reductions,

MicroFab lost two key employees, the statement does not allege with specificity who those

employees were.  These employees were not identified at sentencing either. Crim. ECF (Dkt. #34

at 6-9).  David Wallace, Vice-President of MicroFab, testified that the company was now down to

ten employees, suggesting the company suffered more than the loss of two employees.  *Id*; *see also*

*United States v. Christensen*, 732 F.3d 1094, 1106 (9th Cir. 2013) (district court may consider

unsworn victim impact statements at sentencing; due process violated only when sentence is imposed

on the basis of materially false or unreliable information).  Regardless, this is only one of the many

---

[4] The Notice of No Objections to the PSR states, "Beverly Diane Cross, Defendant, by and through
her attorney of record, after thoroughly reviewing the Presentence Report ("PSR"), both individually and
together, hereby give notice that no objection to the Presentence Report, Doc # 19, will be made."  Crim.
ECF (Dkt. #22).

consequences MicroFab suffered as a result of Movant's actions as outlined in the Victim Impact Statement (Dkt. #1-5).[5]   The precise number of employees who were let go or left voluntarily seems irrelevant to the effects of the larger fraudulent scheme.   Movant has not shown that presentation of this evidence to the Court would have changed the outcome of her sentence.   Moreover, as discussed below, the Court explained that victim impact was not the only factor considered when it decided to vary upward from the guideline range.  Crim. ECF (Dkt. #33 at 13-14).   This claim is denied as Movant has failed to show prejudice.[6]

### C.      Failure to Investigate Mitigation Evidence

Movant next argues counsel was ineffective in failing to investigate Movant's alcoholism and past trauma in order to present mitigating evidence at sentencing.   Movant contends that an independent investigation by trial counsel would have revealed that Movant suffers from major depressive disorder, generalized anxiety disorder, post traumatic stress disorder, and alcohol use disorder, and that presentation of this mitigation evidence "may have influenced" the Court's assessment of Movant's culpability. (Dkt. #1 at 33).  This argument assumes the Court was not privy to this information.   To the contrary, these issues were well-documented in the PSR, to which Movant had no objections.  Crim. ECF (Dkt. #23 at 8-10); Crim. ECF (Dkt. #22); (Dkt. # 7-2 at 6).[7]

---

[5] Some of the other consequences to MicroFab include: diminished or lost profits, depleted savings, lost reinvestment, inability to obtain loans, lost wages, lost business relationships, diminished retirement funds, and additional costs to research and rectify the fraud.

[6] The Court questions how challenging the financial impact Movant's fraudulent scheme had on MicroFab would comport with her acceptance of responsibility.

[7] Trial counsel also submitted character letters on Movant's behalf that addressed Movant's difficult childhood.  (Dkt. #7-2 at 5).

Regardless, trial counsel states that it was his strategy to focus on Movant's acceptance of responsibility rather than her substance abuse problems or past history as excuses for her behavior. (Dkt. #7-2 at 4-5).  "I explained to her that if the Court felt that she was insincere in her apology and acceptance of responsibility, the judge would almost certainly consider that against her in fashioning a just sentence."  *Id*. at 5.  Trial counsel states Movant agreed with this strategy.  *Id*.

A movant questioning trial counsel's strategy faces a difficult challenge because federal courts presumptively defer to an attorney's reasoned, strategic decisions.  *Titsworth v. Dretke*, 401 F.3d 301, 310 (5th Cir. 2005) ("We are to accord substantial deference to counsel's performance, applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment.").  *See Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) ("We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices") (citing *Strickland*, 466 U.S. at 689-90); *see also Garland*, 717 F.2d at 206) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.").  Given the sophisticated and calculated nature of Movant's crimes, her sincere acceptance of responsibility was critical at sentencing.  This is precisely the kind of strategic choice that *Strickland* instructs the courts not to second-guess, and this court will refrain from doing so.  Movant has failed to overcome this presumption and these claims should be denied as Movant has failed to show ineffective assistance or prejudice.

**D.    Failure to Object to Upward Variance**

Movant argues the Court gave significant weight to an improper factor, namely the victim impact statement, which resulted in imposing an unreasonable sentence.  By allegedly solely

focusing on victim impact, Movant argues the Court erred in double-counting the victim impact by adopting the PSR which gave a two-point increase due to victim impact and then doubled the highest sentence recommended in the PSR.  (Dkt. #1 at 25).  To overcome the procedural bar as this was not argued on appeal, Movant claims that trial counsel was deficient in not objecting and by focusing only on Movant's acceptance of responsibility.  *Id*.  Movant also alleges counsel was ineffective in failing to object and preserve this error for appeal.

In response, the Government and trial counsel argue that this is a misrepresentation of what occurred and that the Court identified additional grounds for the upward variance, namely deterrence and other factors.  (Dkt. 7 at 13-14; 7-2 at 5).  At sentencing, the Court stated the following:

THE COURT:  Please be seated.

So, Ms. Cross, I say this all the time. The hardest part of my job is sentencing, and I take no pleasure in sending anybody to jail. And I look at every case and look at -- if you can't tell, I mean, I spent a lot of time looking at your case, and I took a break to just reflect on what is the appropriate sentence. And, of course, the Court has to start off doing the guideline calculation and the Court does that, and we've done that calculation correctly. But then the question is, I have to determine what is the appropriate sentence for what you have done in this case. And as I indicated, and that's why I asked for everyone's comment, trying to figure out was a guideline sentence -- I wasn't going to go down – was a guideline sentence sufficient to meet the goals of the guidelines or should I go up.

And part of the problem that I have with -- like in your case here with these financial crimes is there's a serious victim impact that you have created.

And -- and the problem I have with your case, ma'am, is you did this over a number of years, and even though as the company was hurting and they were laying people off, you continued to steal, and then took advantage when the boss

was away because of a medical issue. You continued to do that, and you showed no regard whatsoever for that.

And the guidelines take into consideration the impact, as I mentioned earlier, the financial impact, the number. But your impact is much more severe than that in terms of the people's lives that worked there that had lost their jobs because of this, and, you know, in terms of the impact of whether the business survives as it goes forward. So there's a serious impact that impacted a lot of people's lives.

And I know a lot of times people say it's a corporation or a company, but the company is made up of employees that you even said are people that are very nice and everything and didn't deserve this, but now they're dealing with the consequences of what you did.

So when I look at that and that victim impact, that's one of the grounds, and I am going to go up on your sentence. That is one of the bases for it.

The other is in these financial crimes, the only way to try to protect the public is to send a message, to set a sufficient sentence to get people to realize this is not okay to do. That's also part of deterrence, to deter this kind of activity in the future, and to show respect for the law.

So the loss you caused was a very deep loss for this – for the victim, and for all those reasons I am going to go up on your sentence.

Crim. ECF (Dkt. #33 at 16-18).

Contrary to Movant's assertions, the record reflects that the Court properly based its variance on the nature and circumstances of the offense and the 18 U.S.C. § 3553(a) factors, including deterrence, promoting respect for the law, just punishment, and to protect the public. *Id*; Statement of Reasons, Crim. ECF (Dkt. #30 at 3); *see also United States v. Jones*, 75 F.4th 502, (5th Cir. 2023) ("the court's identification of over half a dozen reasons for the upward variance at the sentencing

hearing and in its statement of reasons is more than adequate."). Nor did the Court engage in impermissible double counting by varying upwards based on the effect of the crime on the victims. *United States v. Cazimero*, 712 F. App'x 670, 671 (9th Cir. 2018) (citing *Christensen*, 732 F.3d at 1101 ("when selecting an above Guidelines sentence for Christensen, the district court was *not* prohibited from considering the extent to which the Guidelines did not sufficiently account for the nature and circumstances of Christensen's offense, including the amount of the loss, the number of victims, or the harm to the victims, even though the Guidelines account for these factors either implicitly or explicitly, to some extent.")). Because any objection by trial counsel here would have been meritless, counsel was not ineffective. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). The 102 months' sentence imposed, while well beyond the calculated guideline range of 41 to 51 months, was still below the statutory maximum of 20 years' imprisonment. Movant was well aware that the Court could have sentenced her to the maximum per the plea colloquy outlined above and the terms of the plea agreement. This claim of ineffective assistance of counsel is also denied.

### E. Cumulative Error

Finally, Movant argues that the cumulative errors of ineffective assistance of counsel denied her a fair sentencing hearing and denied her due process, warranting re-sentencing. Errors that did not occur can have no cumulative effect. *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir. 1992). As discussed above, Movant's claims of error with respect to ineffective assistance of counsel are without merit and, therefore, had no cumulative effect. This claim should be denied.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(B).   Although Movant has not yet filed a notice of appeal, this Court, nonetheless, addresses whether Movant would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*;  *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor could they find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, Movant is not entitled to a certificate of appealability.

## V.  CONCLUSION AND ORDER

In sum, the record reflects that Movant's plea was knowing and voluntary.  Movant's claims of ineffective assistance of counsel lack merit.  It is therefore **ORDERED** the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and the case is **DISMISSED** with prejudice.  A certificate of appealability is **DENIED**.  It is further **ORDERED** all motions by either party not previously ruled on are  **DENIED**.

**IT IS SO ORDERED**.